**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| **RODERICK M. COFFEE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Cause No. 1:14-cv-1303-WTL-DML |
| ) | |
| **CAROLYN W. COLVIN, Acting** ) | |
| **Commissioner of the Social Security** ) | |
| **Administration,** ) | |
| ) | |
| **Defendant.** ) | |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Roderick M. Coffee requests judicial review of the final decision of the Acting Commissioner of the Social Security Administration (the "Commissioner"), denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Social Security Income ("SSI") under Titles II and XVI of the Social Security Act (the "Act"). The Court now rules as follows.

### I. PROCEDURAL HISTORY

Coffee filed his applications for DIB and SSI on July 30, 2009, alleging disability beginning March 16, 2003, due to left leg pain (and later on, depression). Coffee's applications were initially denied on September 24, 2009, and again upon reconsideration on January 12, 2010. Thereafter, Coffee requested a hearing before an Administrative Law Judge ("ALJ"). The hearing was held on February 17, 2011, via video conference before ALJ Linda S. Halperin. Coffee and his counsel appeared in Indianapolis, Indiana, and the ALJ presided over the hearing from Evanston, Illinois. Gail H. Franklin testified during the hearing as a vocational expert. On April 26, 2011, the ALJ issued a decision denying Coffee's applications for benefits. The

Appeals Council subsequently granted Coffee's request for review and remanded the case for further consideration of Coffee's mental impairments. A second hearing was held on May 3, 2012, in Indianapolis, Indiana before ALJ Daniel J. Mages. During the hearing, Coffee amended his onset date to allege disability beginning on July 28, 2009, rather than March 16, 2003. On May 23, 2012, ALJ Mages denied Coffee's application for benefits. This time, the Appeals Council upheld the ALJ's decision and denied a request for review on June 3, 2014. This action for judicial review ensued.

## II. EVIDENCE OF RECORD

In 1985, Coffee broke his wrist. The fracture required a bone graft from his left hip. He continues to experience residual pain and immobility in his left leg.

In 1987, Coffee suffered a gunshot wound to his abdomen. He still experiences residual pain in his abdomen. He also has pain in his left leg due to nerve damage from the bullet.

In April 2006, Coffee experienced a corneal abrasion in his left eye. As of August 2011, however, his vision was 20/70 in his left eye, 20/13 in the right eye, and 20/13 with both eyes.

In September 2007, Coffee was involved in a motor vehicle accident. He was diagnosed with low back pain and a muscle strain.

On September 16, 2009, Coffee underwent a physical consultative examination with Dr. Farhan Bangash. Dr. Bangash opined as follows:

> [T]he patient does not have any range of motion deficits. The patient is able to walk up to two to four blocks without problems, can remain standing for hours, can climb four to five flights of stairs without problems, can lift 40 pounds in the right and left arm. The patient currently works part time in construction; however he states the pain is what affects his work. Also based on my exam, the patient has normal fine finger skills.

Tr. at 552.

On December 15, 2009, Coffee underwent a psychological consultative examination with Carrie Dixon, Ph.D. She diagnosed him with dysthymic disorder, assigned him a Global Assessment of Functioning ("GAF") of 60, and stated that he "appears capable of managing his own funds. He exhibits signs of good reality contact. He exhibits intact memory skills. He experiences only minor difficulty performing simple calculations." *Id.* at 558.

In January 2011, Coffee's son suffered a fatal gunshot wound, and shortly thereafter, he sought mental health treatment for stress, depression, and coping with his son's death.

On August 27, 2011, Coffee underwent a second physical consultative examination with Dr. Elizabeth Brater. She opined as follows:

> This is a 48 y/o male with history of GSW with nerve damage with loss of light touch left lateral thigh and weakness of LUE, a history of right hip fracture with residual pain on ROM and activity, arthritis of neck, knees and cervical spine with loss of respective ROM and positive straight leg raise, the inability to squat or stand on right leg or heel/toe/tandem walk with fracture of right wrist with loss of ROM and weak grips with stress, anxiety, activity intolerance and a positive Romberg.
>
> . . .
>
> The claimant should have the ability to sit, stand and walk >4hr[s] in an 8hr work day with regular breaks. The claimant could be expected to lift 20 lb infrequently. Postural limitations [such as] bending, stooping, crouching, kneeling and crawling should be avoided. Fine and gross manipulation on reaching, handling, feeling, grasping, and fingering can be performed occasionally. Environmental limitations are not hot, cold temperatures. There are no driving limitations, no visual or communication limitations.

*Id.* at 671-72.

On September 15, 2011, Coffee underwent a second psychological consultative examination with Nicole Leisgang, Psy.D. She diagnosed Coffee with depressive disorder, not otherwise specified, and assigned him a GAF score of 51. She also summarized as follows:

> Coffee is a 49-year-old single man seeking disability compensation due to health problems and depressed mood. He reported old injuries which result[ ] in pain. He denied anxious mood but did report symptoms somewhat suggestive of PTSD

3

> although his description of his emotional functioning did not reach the levels of a clinical diagnosis. Nonetheless, he described himself as continually depressed, particularly since his son's murder. During this evaluation, he did appear to be anxious and significantly depressed. He was generally dysphoric. He is currently involved with Midtown Community Mental Health Center. Referral information alludes to Adjustment Disorder with Depressed Mood. At the present time, lives with his brother and maintains a somewhat restricted activity level. He noted that he has little contact with anyone other than family. He does go to the park where he reads or feeds the birds.

*Id.* at 684.

### III. APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d) (1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity, he is not disabled, despite his medical condition and other factors. 20 C.F.R. § 404.1520(b).[1] At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits his ability to perform basic work activities), he is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of

---

[1] The Code of Federal Regulations contains separate sections relating to DIB and SSI that are identical in all respects relevant to this case. For the sake of simplicity, this Entry contains citations to DIB sections only.

Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, he is not disabled. 20 C.F.R. § 404.1520(g).

On review, the ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id.,* and this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue,* 546 F.3d 456, 462 (7th Cir. 2008). The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into [his] reasoning . . . [and] build an accurate and logical bridge from the evidence to [his] conclusion." *Id.*

## IV.    THE ALJ'S DECISION

At step one, the ALJ found that Coffee had not engaged in substantial gainful activity since July 28, 2009, his (revised) alleged onset date. At step two, the ALJ concluded that Coffee suffered from the following severe impairments: The residual effects of a gunshot wound to the abdomen with nerve damage to the left leg;[2] the residual effects of surgery to repair a fractured

---

[2] The ALJ noted that the nerve damage was in the right leg. The medical records, however, indicate that it is the nerve damage is in the left leg. *See* Tr. at 550.

5

right wrist, including taking bone from the left hip; a scratched left cornea; right carpal tunnel syndrome; dysthymia; an adjustment disorder; and posttraumatic stress disorder. At step three, the ALJ determined that Coffee's severe impairments did not meet or medically equal a listed impairment. At step four, the ALJ concluded that Coffee had the residual functional capacity ("RFC") to perform a range of light work, defined as follows:

> [S]itting four hours during an eight-hour workday; standing and walking four hours during an eight-hour workday; lifting, carrying, pushing and pulling twenty pounds occasionally and ten pounds frequently; occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching and crawling; no climbing ladders, ropes or scaffolds; no work around dangerous moving machinery or at unprotected heights; frequent fingering and handling with the dominant right upper extremity; simple and repetitive tasks with the ability to attend, concentrate, and persist for two hours at a time; and no more than superficial interaction with the public, coworkers or supervisors.

Tr. at 17-18. Given this RFC, and taking into account Coffee's age, education, and work experience, the ALJ determined at step five that Coffee could perform jobs existing in significant numbers in the national economy, those being a small product assembler, a plastics packager, and an assembly press operator. Accordingly, the ALJ concluded that Coffee was not disabled as defined by the Act from July 28, 2009, through the date of his decision.

## V. DISCUSSION

Coffee advances several objections to the ALJ's decision; each is addressed below.

### 1. Listings

First, Coffee argues that he "met his burden of proof by offering to the ALJ substantial medical evidence proving that his depression, anxiety, and chronic pain rendered him totally disabled." Coffee's Br., Dkt. No. 20 at 11. The Court does not agree.

Coffee insists that the "ALJ emphasized the GAF assessments . . . that showed the claimant was not disabled and ignored the lower GAF assessments that indicated he was disabled." *Id.*

The Court notes that GAF assessments do not indicate that one is disabled as defined by the Social Security Act. Indeed, "nowhere do the Social Security regulations or case law require an ALJ to determine the extent of an individual's disability based entirely on his GAF score." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (citations and quotations omitted). Moreover, the Social Security Administration has concluded that GAF scores do "not have a direct correlation to the severity requirements in [the] mental disorders listings." Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 F.R. 50746-01. Simply put, the GAF scores alone (and specifically, the one-time GAF score of 45 that Coffee suggests was selectively ignored) do not satisfy Listing 12.04, or the paragraph B criteria. Additionally, the fact that the ALJ did not mention Coffee's GAF score of 45, which was assessed on March 24, 2011, is not reversible error. Indeed, on the very same date, a different medical provided assigned Coffee a GAF score of 53. GAF scores in the 50s were also assigned during the fall of 2011, after the one-time score of 45 was assessed. As such, the ALJ's discussion of the GAF scores was not improper.

Coffee also argues that Dr. Brater's medical evaluation on August 27, 2011 "proved that he was totally disabled," and the ALJ "arbitrarily rejected" the opinion. Coffee's Br. at 12. Regarding Dr. Brater's opinion, the ALJ concluded as follows:

> Dr. Brater's opinion is that the claimant is unable to work eight hours per day. This opinion is given little weight as it is not consistent with the objective medical evidence that supports the claimant's ability to engage in a range of light work. The physical examinations of record fails to document any significant deficits that support an inability to sustain work at the range of light work detailed [in the opinion].

7

Tr. at 23. First and foremost, the ALJ is not required to give any special deference to the opinion of a consultative examiner. *See* 20 C.F.R. § 404.1527(c) (special deference only given to treating physicians). Moreover, Coffee fails to identify why the ALJ's decision to give Dr. Brater's opinion "little weight" is improper. Because Coffee's argument is unsupported, the Court is unable to find that the ALJ's treatment of Dr. Brater's opinion requires remand.

Coffee also argues, very briefly, that the ALJ should have relied on Coffee's subjective complaints of disabling impairments. In other words, Coffee attempts to attack the ALJ's credibility determination. As the Defendant notes, however, "the ALJ discussed in detail the various credibility factors, such as aggravating and precipitating factors, use of medications, treatment, and function limitations in the record." Def.'s Br. at 13. Accordingly, the Court finds no issues with the ALJ's credibility determination.

### 2. Medical Advisor

Next, Coffee argues that "[t]he ALJ's failure to summon a medical advisor to testify whether the claimant's combined impairments medically equaled any Listed impairment[,] such as 12.04 requires reversal." Coffee's Br. at 14. Coffee specifically takes issue with the fact that the agency's reviewing physicians examined Coffee prior to January 16, 2012. Thus, they did not have an opportunity to review the "psychiatric and medical treatment records [between] 1-16-12 and 4-9-12." *Id.* The ALJ, however, did not abuse his discretion in failing to call a medical expert to testify at the hearing.

Whether a claimant's condition equals a listed impairment is "strictly a medical determination," and "the focus must be on medical evidence." *Hickman v. Apfel*, 187 F.3d 683, 688 (7th Cir. 1999). However, the court gives deference to an ALJ's decision about how much evidence is sufficient to develop the record and what measures are needed to accomplish that

goal. *See Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2007); *Kendrick v. Shalala*, 998 F.2d 455, 458 (7th Cir. 1993). Thus, an ALJ's decision to call a medical expert is discretionary, 20 C.F.R. § 416.927(f)(2)(iii), and an ALJ is not required to consult a medical expert if the medical evidence in the record is adequate to render a decision on the claimant's disability. *See Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004).

It is unclear to the Court why the treatment notes between January 16, 2012 and April 4, 2012, are particularly significant and require additional review by a physician. During that time, Coffee received treatment from the Midtown Community Mental Health Center. Coffee, however, fails to articulate in any meaningful way why these treatment records are important, and the Court, without more, will not reverse this matter simply because the ALJ did not call a psychologist to consider "*all* of the evidence in the record." *See also D.N.M. ex rel. Brame v. Colvin*, No. 1:13-CV-00884-RLY, 2014 WL 4636390, at *7 (S.D. Ind. Sept. 16, 2014) ("His argument is: 'Presumably if they had reviewed all of the evidence they would have reasonably determined the claimant was totally disabled.' . . . That is certainly not the Court's presumption. While it might be [the plaintiff's] presumption, it was definitely his *burden* to show that the nature of these items of evidence, compared to the other evidence the state agency physicians reviewed, required the ALJ to obtain a supplemental medical opinion.") (emphasis in original).

### A. Step Five Determination

Lastly, Coffee argues that "the ALJ's [RFC] assessment . . . omits almost all of the mental limitations reported by his mental health clinic and those determined by the claimant's examining physician Dr. Brater." Coffee's Br. at 17. Thus, according to Coffee, the ALJ's determination at step five was not supported by substantial evidence. This argument, however, is premised mostly on the idea that Coffee's impairments are disabling and more severe than what

9

was found by the ALJ. As discussed above, however, the ALJ's consideration of Coffee's impairments, as well as the report of Dr. Brater, was not improper. Accordingly, the ALJ's step five analysis does not warrant remand.

## VI. CONCLUSION

In this case, the ALJ satisfied his obligation to articulate the reasons for his decision, and that decision is supported by substantial evidence in the record. Accordingly, the decision of the ALJ is **AFFIRMED**.

SO ORDERED: 5/19/15

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.